IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EVERETT McCOY,

       Plaintiff,              No. CIV S-01-1218 DFL GGH P

   vs.

CAL TERHUNE, et al.,

       Defendants.        FINDINGS & RECOMMENDATIONS

_____/

I.  Introduction

       Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' summary judgment motion filed September 8, 2005.  On June 9, 2006, plaintiff filed his opposition.  On July 14, 2006, defendants filed a reply.  After carefully considering the record, the court recommends that defendants' motion be granted in part and denied in part.

II.  Summary Judgment Standards Under Rule 56

       Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

/////

1

1     Under summary judgment practice, the moving party

2     always bears the initial responsibility of informing the district court
      of the basis for its motion, and identifying those portions of "the
3     pleadings, depositions, answers to interrogatories, and admissions
      on file, together with the affidavits, if any," which it believes
4     demonstrate the absence of a genuine issue of material fact.

5     Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

6     P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

7     issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

8     depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

9     should be entered, after adequate time for discovery and upon motion, against a party who fails to

10    make a showing sufficient to establish the existence of an element essential to that party's case,

11    and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

12    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

13    necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

14    should be granted, "so long as whatever is before the district court demonstrates that the standard

15    for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

16    2553.

17           If the moving party meets its initial responsibility, the burden then shifts to the

18    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

19    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

20    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

21    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

22    specific facts in the form of affidavits, and/or admissible discovery material, in support of its

23    contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

24    106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

25    material, i.e., a fact that might affect the outcome of the suit under the governing law, see

26    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

1  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

2  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

3  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

4        In the endeavor to establish the existence of a factual dispute, the opposing party

5  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

6  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

7  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

8  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

9  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

10  56(e) advisory committee's note on 1963 amendments).

11        In resolving the summary judgment motion, the court examines the pleadings,

12  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

13  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

14  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

15  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

16  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

17  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

18  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

19  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

20  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

21  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

23        On October 23, 2003, the court advised plaintiff of the requirements for opposing

24  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

25  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

26  1988).

III.   <u>Discussion</u>

This action is proceeding on the second amended complaint filed February 5, 2003.  The defendants in this action are Cal Terhune, Cheryl Pliler, T. Rosario, K. M. Chastain, A. Stiles, M. Martel, D. Baughman, D. T. Kimbrell, P. Massey, S. L. Scarcella, B. Holmes, R. Andrade, E. Advincula, R. Lynch, K. Dunlap, V. Mini, D. Hoffman, Dr. Jaffee, Dr. Johnson, Dr. Kelly, Dr. Clavere and Dr. Shoemaker.

A.   <u>Defendant Andrade: ¶ 27-29, 32-33</u>

Plaintiff alleges that defendant Andrade denied him medical care in violation of the Eighth Amendment as well as for retaliatory reasons.  Although defendants have not moved for summary judgment as to plaintiff's retaliation claim, the court will briefly address this claim below.

1.   <u>Eighth Amendment</u>

*Legal Standard*

Plaintiff alleges that defendant Andrade provided inadequate medical care.

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or

4

1    treatment; the presence of a medical condition that significantly affects an individual's daily

2    activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

3    F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

4    (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

5    grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

6           In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

7    defined a very strict standard which a plaintiff must meet in order to establish "deliberate

8    indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

9    However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

10   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

11   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

12   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

13          It is nothing less than recklessness in the criminal sense—a subjective standard—

14   disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

15   1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

16   that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

17   114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

18   of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

19   847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

20   knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

21   obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

22   1981.  However, obviousness per se will not impart knowledge as a matter of law.

23          Also significant to the analysis is the well established principle that mere

24   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

25   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

26   662 F.2d 1337, 1344 (9th Cir. 1981).

1      Moreover, a physician need not fail to treat an inmate altogether in order to violate

2 that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

3 1989).  A failure to competently treat a serious medical condition, even if some treatment is

4 prescribed, may constitute deliberate indifference in a particular case.  Id.

5      Additionally, mere delay in medical treatment without more is insufficient to state

6 a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

7 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

8 no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

9 Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

10 1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

11 to provide additional support for a claim of deliberate indifference; however, it does not end the

12 inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

13 medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

14 needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

15 the defendant."  McGuckin, 974 F.2d at 1061.

16      Superimposed on these Eighth Amendment standards is the fact that in cases

17 involving complex medical issues where plaintiff contests the type of treatment he received,

18 expert opinion will almost always be necessary to establish the necessary level of deliberate

19 indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

20 may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

21 treatment he received equated with deliberate indifference thereby creating a material issue of

22 fact, summary judgment should be entered for defendants.  The dispositive question on this

23 summary judgment motion is ultimately not what was the most appropriate course of treatment

24 for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

25 criminally reckless.

26 /////

1    *Analysis*

2         Plaintiff first claims that defendant Andrade delayed his access to medical care.

3         The following facts regarding this claim are undisputed.  On February 1, 2001,

4    plaintiff was transferred to California State Prison-Sacramento (CSP-Sac) from the Sacramento

5    County Jail.  Plaintiff was medically cleared at the jail prior to his transfer.  Plaintiff arrived at

6    CSP-Sac at approximately 10:00 a.m.  At 12:00 p.m. plaintiff was seen by a nurse in receiving

7    and release.  The nurse referred plaintiff to a prison doctor who directed that plaintiff be sent to

8    Mercy Hospital.  Defendants do not dispute that plaintiff had a variety of injuries following his

9    return from the jail including contusions to his face.

10        In his declaration filed in support of the pending motion, defendant Andrade states

11   that he does not recall plaintiff or his physical condition when he arrived at CSP-Sac.  Andrade

12   declaration, ¶ 4.

13        In his verified declaration filed in support of his opposition, plaintiff alleges that

14   on February 1, 2001, he was beaten by guards at the Sacramento County Jail.  Plaintiff's

15   Declaration, ¶ 1.  Plaintiff alleges that as a result of the beating, he suffered injuries to his face,

16   head, eyes, back and other parts of his body.  Id., ¶ 2.  When plaintiff arrived at CSP-Sacramento,

17   he had to be assisted out of the van because he could not move or stand without assistance.  Id., ¶

18   3.

19        Plaintiff alleges that while in the security holding cell, plaintiff repeatedly asked

20   defendant Andrade for emergency medical care.  Id., ¶ 4.  Defendant Andrade refused plaintiff's

21   request and told him that he should have thought about that before assaulting a peace officer.  Id.

22   During the two hours that plaintiff was in the holding cell, he felt severe pain and vomited twice.

23   Id., ¶ 5.

24        The court first considers whether plaintiff had a serious medical need upon his

25   arrival at CSP-Sac.  Although plaintiff had been medically cleared by a nurse at the jail prior to

26   his transfer, the record written by the nurse who examined plaintiff at the prison at 12:00 p.m.

1  states that there was dried blood on plaintiff's face as well as contusions to his scalp and left eye.

2  Defendants' Exhibit C, p. 38.  Plaintiff's right eye had superficial abrasions.  Id.  In his

3  declaration, plaintiff states that he could not stand or walk without assistance.  The nurse who

4  examined plaintiff referred plaintiff to a doctor who then ordered x-rays.  This evidence suggests

5  that plaintiff had a serious medical need upon his arrival at CSP-Sac.

6  　　　　The court next considers whether defendant Andrade acted with deliberate

7  indifference when he failed to immediately summon medical care for plaintiff upon his arrival at

8  CSP-Sac.  Plaintiff had visible injuries to his face.  Plaintiff also claims that he had difficulty

9  walking.  Plaintiff alleges that defendant Andrade saw these injuries and that plaintiff told him

10  that he was suffering from great pain. Based on these circumstances, the court cannot find that

11  defendant's failure to treat plaintiff's medical condition as an emergency did not constitute

12  deliberate indifference.  While plaintiff received treatment approximately two hours after he

13  arrived at CSP-Sac, he suffered severe pain and vomited during this delay.  This evidence

14  sufficiently demonstrates that plaintiff suffered harm as a result of his delay in receipt of

15  treatment.  McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-

16  1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000.  For these reasons, the court

17  recommends that defendant Andrade be denied summary judgment as to this claim.

18  　　　　Plaintiff goes on to allege that upon his return from the hospital where he received

19  x-rays, defendant Andrade disregarded the doctor's orders regarding plaintiff's care.  It is

20  undisputed that following his release from the hospital, the doctor gave plaintiff a document

21  stating that he had suffered a head injury.  Defendants' Exhibit C, p. 40.  This document stated,

22  　　　During the next 24 hours you must stay with someone who can watch you for the
　　　above warning signs.  This person should WAKE YOU UP EVERY TWO

23  　　　HOURS to be sure that you can be awakened easily and that you respond
　　　normally.

24

25  Id.

26  　　　　The doctor also stated that plaintiff should apply an ice pack to his contusion for

1   twenty minutes every one to two hours during the first twenty-four hours and then for three to

2   four days until the swelling went down.  Id., p. 41.  Dr. Mitchell at CSP-Sac also ordered pain

3   killers and ice packs for plaintiff.  Id., pp. 40-41.  The parties do not dispute that following his

4   return to CSP-Sac from the hospital, plaintiff was placed in administrative segregation (ad seg).

5          In his declaration filed in support of his opposition, plaintiff states that following

6   his return from the hospital, he gave defendant Andrade the documents from the doctor which

7   described the care he should receive.  Plaintiff's Declaration,¶ 16.  Plaintiff told defendant

8   Andrade that he should be placed in the infirmary.  Id.  Defendant Andrade instead took plaintiff

9   to ad seg.  Id.  Plaintiff claims that while in ad seg, neither the third nor first watch staff provided

10  him with pain medication or an ice pack.  Id., ¶ 18.  Plaintiff also claims that the third and first

11  watch staff did not wake him up every two hours and observe him for warning signs of brain

12  injury.  Id., ¶ 18.

13         Defendants suggest that plaintiff's failure to receive pain medication and cold

14  packs was not defendant Andrade's fault.  Defendants state that Dr. Mitchell's order for pain

15  killers and ice packs was given to the ad seg Medical Technical Assistant (MTA).  Defendants'

16  Exhibit C, pp. 13-14.  This evidence indicates that plaintiff's failure to obtain cold packs and

17  pain medication was caused by the failure of the ad seg MTA to follow Dr. Mitchell's order

18  rather than by any conduct by defendant Andrade.

19         Defendants also argue that plaintiff was adequately checked on while in ad seg.

20  During the First Watch in ad seg, which runs from 10:00 p.m. to 6:00 a.m., inmates are checked

21  by the Floor Officer once every hour.  Declaration M. Martel, ¶ 4.  The Floor Officer shines a

22  flashlight in the cells.  Id.  In addition, inmates in ad seg are observed on a continuing basis by an

23  officer in the Control Booth.  Id., ¶ 5.

24         It is clear that the orders of the hospital doctor that plaintiff be woken up every

25  two hours were not followed.  Plaintiff has presented evidence indicating that he gave defendant

26  Andrade the paperwork from the doctor containing this order but the record contains no evidence

1  regarding what defendant did with the paperwork.  Without knowing what defendant Andrade

2  did with this paperwork, the court cannot find that he did not act with deliberate indifference.  If,

3  for example, defendant gave the paper work to the MTA, who then failed to implement the

4  doctor's orders, then the court would not find deliberate indifference.  For these reasons,

5  defendant Andrade should be denied summary judgment as to this claim.

6         2.  Retaliation

7         As stated above, defendants have not moved for summary judgment as to

8  plaintiff's retaliation claim.  Plaintiff alleges that defendant Andrade denied him access to

9  medical care in retaliation for the incident at the Sacramento County Jail.

10         Prisoners cannot be retaliated against by prison officials for filing inmate

11  grievances.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  "Within the prison context,

12  a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

13  state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

14  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,

15  [footnote 5], and (5) the action did not reasonably advance a legitimate correctional goal."  Id.,

16  567-568.

17         In Rhodes v. Robinson, the Ninth Circuit also indicated that an allegation of harm

18  could be sufficient if the inmate could not allege a chilling effect:

19       If Rhodes had not alleged a chilling effect, perhaps his allegations
        that he suffered harm would suffice, since harm that is more than

20       minimal will almost always have a chilling effect.  Alleging harm
        and alleging the chilling effect would seem under the

21       circumstances to be no more than a nicety.  See, e.g., Pratt, 65 F.3d
        at 807 (deciding that alleged harm was enough to ground a First

22       Amendment retaliation claim without independently discussing
        whether the harm had a chilling effect); Valandingham v.

23       Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)(same).

24  408 F.3d at 568 n. 11.

25         Plaintiff is claiming that the protected conduct he engaged in was self-defense

26  while he was allegedly being attacked by jail officials.  The harm he suffered as a result of

1  defendant Andrade's conduct was physical pain described above.  Because it is not clear that

2  defendant Andrade is entitled to summary judgment as to this claim, the court will not address

3  this claim sua sponte.  Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982)(court may

4  sua sponte grant summary judgment if losing party has had a full and fair opportunity to ventilate

5  the issues involved in the matter).

6            B.  Defendant Massey: ¶ 30-31

7          Plaintiff alleges that on February 1, 2001, following his return from the

8  Sacramento County Jail, defendant Massey improperly ordered him placed in ad seg.  Plaintiff

9  argues that defendant Massey acted in retaliation for the incident at the Sacramento County Jail.

10  Defendants have construed these allegations to be alleging a claim for violation of plaintiff's

11  right to due process.  Although defendants have not moved for summary judgment as to the

12  related retaliation claim, the court will sua sponte recommend that summary judgment be entered

13  as to the retaliation claim because plaintiff has had a "full and fair opportunity to ventilate the

14  issues involved in the matter."  Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982).

15          The court will first address plaintiff's due process claim.  It is undisputed that on

16  February 1, 2001, following his return from the jail, plaintiff was placed in ad seg for

17  nonpunitive reasons.  In other words, plaintiff was not placed in ad seg based on disciplinary

18  charges.  See Martel declaration ¶ 7-8.  Nonpunitive placement in administrative segregation

19  requires an "informal, nonadversary review of the information supporting [] administrative

20  confinement, including whatever statement [the inmate] wished to submit, within a reasonable

21  time after confining him to administrative segregation."  Hewitt v. Helms, 459 U.S. 460, 472,

22  103 S.Ct. 864, 872 (1983); see also Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986).

23          Due process requires that there be an evidentiary basis for the prison officials'

24  decision to place an inmate in segregation for administrative reasons.  Superintendent v. Hill, 472

25  U.S. 445, 466, 105 S.Ct. 2768 (1985); Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.

26  1986).  The standard is met if there is "some evidence" from which the conclusion of the

administrative tribunal could be deduced.  Id.  The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers.  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

It is undisputed that on February 9, 2001, plaintiff appeared before the Institutional Classification Committee (ICC) for a hearing regarding his placement in ad seg on February 1, 2001.  Defendants' Exhibit B, p. 41.  The ICC returned plaintiff to the general population.  Id.  This evidence indicates that defendants provided plaintiff with a hearing within a reasonable amount of time after his initial confinement to ad seg.  Accordingly, plaintiff received the process to which he was entitled as to the timing of his hearing.

According to defendants plaintiff was placed in ad seg for security reasons:

> 7.  Inmate McCoy was in an altercation with deputies while he was in out-to-court status at the Sacramento County Main Jail shortly before he returned to CSP-Sac in February 2001.  It was proper procedure to place him in administrative segregation upon his return to CSP-Sac because of the fracas he had with the deputies.

> 8.  Any inmate who has had difficulty with outside peace officers while he was away from the institution is placed in administrative segregation when he returns to CSP-Sac.  This gives the inmate a cooling off period.  It also gives prison staff a better control of what could become a volatile situation.  Custodial security and staff, inmate, and public safety take precedence over all other considerations in the operation of a prison.

Martel Declaration.

In his opposition, plaintiff argues that defendants did not have a policy of placing inmates in ad seg for a cooling off period following difficulties with outside peace officers.  In support of this claim, plaintiff refers to the declaration of inmate Chappell submitted in support of his opposition.  In this declaration, inmate Chappell states that while housed at the Sacramento County Jail on March 4, 1999, he was attacked by Sacramento County Sheriff's Deputy Henry.  Upon returning to CSP-Sac, Chappell was not placed in ad sg for a cooling off period.  Instead he was re-housed on Facility C.

In their reply to plaintiff's opposition, defendants state that plaintiff has submitted

other papers in support of his opposition in which other jail staff observed the incident involving

inmate Chappell and were critical of the actions staff took against Chappell.  Plaintiff's

Opposition, Exhibit B p. 11.  Defendants argue that because the two situations appear very

different, the incident involving Chappell should be disregarded.

According to defendant Martel, any inmate who has had "difficulty" with outside

peace officers while he was away from the institution is placed in administrative segregation

when he returns to CSP-Sac.  Defendant Martel does not state that this policy applies only to

inmates who are accused of misconduct.  In addition, it is unclear whether prison officials were

aware that inmate Chappell was not "at fault" when he returned to CSP-Sac following his

incident at the Sacramento County Jail.  For these reasons, the court finds that whether

defendants placed plaintiff in ad seg for the legitimate reason of institutional security at the time

he returned from CSP-Sac is a materially disputed fact.

The court will not address plaintiff's retaliation claim against defendant Massey

sua sponte because it is unclear whether defendant is entitled to summary judgment as to this

claim.

C.  Defendant Advincula: ¶ 34-35

Plaintiff alleges that defendant Advincula violated his Eighth Amendment right to

adequate medical care and acted in retaliation for the incident at the Sacramento County Jail

when he took plaintiff's walking cane.  Defendants have moved for summary judgment only as to

plaintiff's Eighth Amendment claim.  Because it is not clear that defendant Advincula is entitled

to summary judgment as to plaintiff's retaliation claim, the court will not sua sponte address this

claim. Cool Fuel, supra.

In the second amended complaint, plaintiff alleges that on February 9, 2001,

following his release from ad seg, defendant Advincula took plaintiff's medically prescribed

walking cane and placed it on a pushcart which was heavily loaded with five other prisoners'

personal property.  Defendant Advincula than ordered plaintiff to push the cart from ad seg to C-

1    Facility, which was over one-quarter mile away.  After plaintiff told defendant Advincula that he

2    had a back injury, defendant still made plaintiff push the cart.  Plaintiff alleges that defendant

3    told him, "yeah, those Sac Sheriff's don't [expletive] play do they?  I bet you're in no rush to

4    tangle with them again are you?  Now grab the cart and let's get a move on."  Second Amended

5    Complaint, p. 8.  Plaintiff had to stop several times along the way due to pain.

6            In the summary judgment motion, defendants state that when an inmate is moved

7    from ad seg or the infirmary or back to general population, he does not have any personal

8    property with him.  Declaration of B. Holmes, ¶ 5.  Defendants go on to argue that while plaintiff

9    may have been unhappy that he had to walk, holding onto a push cart would have provided some

10   of the assistance in walking that using a cane provided.

11           Plaintiff is alleging that defendant Advincula disregarded his serious medical

12   needs when he required him to push the pushcart for one quarter mile.  Defendants do not argue

13   that plaintiff did not have a serious medical need.  The fact that plaintiff had a cane supports that

14   claim that he had a medical problem with his back.

15           Defendants suggest that defendant Advincula did not act with deliberate

16   indifference to plaintiff's serious medical need because holding onto the push cart provided some

17   of the assistance that the cane provided.  Even if the cart had only a small amount of property on

18   it, as alleged by defendants, the court could not find that requiring plaintiff to push the cart when

19   it was obviously causing him pain did not necessarily constitute deliberate indifference.  For

20   these reasons, defendant Advincula should be denied summary judgment.

21           D.  Defendant Holmes: ¶ 36-37

22           Plaintiff alleges that upon his return to the general population on February 9,

23   2001, he was assigned to a lower bunk cell in a lower tier of his housing unit due to his back

24   injury.  Plaintiff alleges that defendant Holmes acted with deliberate indifference to his medical

25   needs by assigning him to a cell on the upper tier.  Plaintiff also alleges that defendant Holmes

26   was retaliating against him based on the incident at the Sacramento County Jail.  Defendants

1  have not moved for summary judgment as to plaintiff's retaliation claim.  The court will not

2  address this claim sua sponte because it is not clear whether defendant Holmes is entitled to

3  summary judgment as to this claim.

4            In the summary judgment motion, defendants admit that on February 1, 2001,

5  when plaintiff returned to CSP-Sac from the County Jail, Dr. Mitchell ordered that plaintiff be

6  housed on a lower tier with a lower bunk.  Defendants state that on February 9, 2001, when

7  plaintiff was returned to the general population, there was no medical chrono or any other

8  medical order requiring that plaintiff be housed on a lower tier.  In support of this contention,

9  defendants cite pages 49-53 of their exhibit C, which includes plaintiff's medical records.  These

10  records address plaintiff's mental health treatment.  The court does not find that these records

11  demonstrate that no chrono existed for plaintiff to be housed in a lower tier.

12            Defendants also cite the declaration of defendant Holmes in support of the claim

13  that plaintiff did not have a lower bunk/tier chrono on February 9, 2001.  In his declaration

14  defendant Holmes states, in relevant part,

15        3.  Inmate Everett McCoy has sued me because he said I interfered with his
          prescribed medical treatment when he returned to the general population inmate
16        housing on Facility C from administrative segregation on February 9, 2001.  He
          claims I assigned him to a second tier cell rather than a first tier cell.  I do not
17        recall this incident.  However, if an inmate has a medical chrono prescribing a
          first tier cell or a lower bunk, it is my practice go to out of my way to
18        accommodate the medical chrono.  In addition, if an inmate insists that a doctor
          has prescribed a first tier cell or lower bunk, or any other housing restriction, and
19        there is no medical chrono to that effect in the inmate's Central File, it is my
          practice to verify the authenticity of the inmate's claim with medical staff.  If I am
20        not able to accommodate a housing restriction in a medical chrono, it is my
          practice to send the inmate back to administrative segregation or the infirmary
21        until an accommodation can be made.

22  Holmes Declaration, ¶ 3.

23            While the declaration of defendant Holmes addresses his practice, plaintiff's

24  second amended complaint suggests that defendant Holmes disregarded this practice.   The court

25  also observes that Dr. Mitchell's order for the lower tier and lower bunk contains no ending date.

26  Defendants' Exhibit C, p. 14.  Based on this evidence, plaintiff's failure to submit the at-issue

1   chrono does not undermine the statements in his declaration that such a chrono existed.

2   Persuasive evidence that such a chrono did not exist would be a declaration by a doctor who

3   reviewed plaintiff's medical records.  Because defendants have not presented sufficient evidence

4   that a chrono for a lower tier/bunk did not exist, defendant Holmes should not be granted

5   summary judgment as to this claim.

6   E.  Defendants Johnson, Shoemaker and Jaffee: pp. 9-10

7   Plaintiff alleges that defendants Johnson, Jaffee and Shoemaker refused to treat

8   him for post traumatic stress disorder (PTSD) in violation of the Eighth Amendment.  Plaintiff

9   claims that on March 1, 2001, defendant Shoemaker diagnosed plaintiff as suffering from PTSD

10   as a result of the February 1, 2001, incident.  Plaintiff alleges that defendant Shoemaker told him

11   that pursuant to policy, PTSD was not among the list of approved diagnosis that mental health

12   staff was permitted to treat.  Defendant Johnson agreed with this conclusion.  Plaintiff alleges

13   that defendant Jaffee also promulgated the policy to not treat PTSD.

14   Defendants do not dispute that on March 13, 2001, defendant Shoemaker

15   provisionally diagnosed plaintiff as suffering from PTSD.  Moazem Declaration, ¶ 7.  Defendants

16   do not dispute that plaintiff was not treated specifically for this illness.  Defendants argue that

17   they did not act with deliberate indifference because plaintiff received treatment for other mental

18   illnesses which included the symptoms of PTSD.

19   In particular, defendants state that during 2001, mental health care providers for

20   the California Department of Corrections and Rehabilitation (CDCR) did not specifically treat

21   PTSD.  Moazam Declaration, ¶ 15.  Rather, based on the litigation in Coleman v. Wilson, 912

22   F.Supp. 1282 (E.D.Cal. 1995) CDCR health care providers treated inmates suffering from the ten

23   major mental health diagnostic categories which did not include PTSD  Id., ¶ 3.

24   According to defendants, while at CSP-Sacramento, plaintiff was diagnosed as

25   having bipolar disorder with psychosis, being depressed, having a history of paranoid psychosis,

26   and having a history of psychosis not otherwise specified.  Id., ¶ 4.  When defendant Shoemaker

provisionally diagnosed plaintiff as having PTSD on March 13, 2001, this meant that plaintiff may have been suffering from PTSD.  Id., ¶ 7.  The symptoms plaintiff reported in March 2001 were also associated with bipolar, depression and psychosis not otherwise specified.  Id.

Defendants argue that plaintiff was seen several times by mental health professionals during the time in question.  Plaintiff was seen by defendant Shoemaker, a clinical psychologist, on March 1, March 6, March 13, and March 20, 2001.  Id., ¶ 9.  Defendant Johnson, a psychiatrist, saw plaintiff on March 1, March 6, and March 13, 2001.  Id.  On March 1, 2001, defendant Johnson prescribed 20 milligrams of olanzapine, an anti-psychotic drug, for plaintiff.  Johnson declaration, ¶ 5.  This drug treats insomnia, paranoia and auditory hallucinations.  Id.  Plaintiff was also prescribed lithium, which is a mood stabilizer used to treat the mood swings associated with bipolar disorder.  Id.

After reviewing plaintiff's progress notes, defendant Johnson determined that plaintiff's symptoms began sounding like PTSD in mid April 2001 when he saw Dr. Ewing, another psychiatrist.  Id., ¶ 4.  In his declaration defendant Johnson describes Dr. Ewing's treatment of plaintiff:

> 13.  Many medications have been useful to treat post traumatic stress disorder. Sometimes anti-depressants have been helpful.  However, a clinician has to be careful in prescribing anti-depressants to someone who is bipolar.  Inmate McCoy's primary diagnosis was bipolar disorder/depression.  Many of the symptoms Inmate McCoy described could arise from a cycle of depression as well as post traumatic stress disorder.
>
> 14.  I noted that Dr. Ewing prescribed Remeron/Mirtazapine for Inmate McCoy. This is an anti-depressant that will help with depression and sleep disturbances.
>
> 15.  I noted that on June 11, 2001, Dr. Ewing prescribed Wellbutrin/Bupropuron. This is another anti-depressant.  We have discontinued using it at CSP-Sac because it is addictive and many inmates abuse it by grinding it up and snorting it or selling it to other inmates.  Wellbutrin/Bupropuron tends to be more stimulating than sedating.  Welbutrin could be used to treat symptoms of post traumatic stress disorder.  While it would not be a first line choice, Inmate McCoy had not responded to the Remeron that Dr. Ewing previously prescribe for him.

Id.

/////

That PTSD is not listed one of the major mental health diagnostic categories in the <u>Coleman</u> litigation is not a defense to plaintiff's Eighth Amendment claim. Accordingly, the court will not address the scope of the <u>Coleman</u> litigation.

Defendants do not dispute that PTSD is a serious medical condition. Defendants argue that they did not act with deliberate indifference because they treated plaintiff for other mental illnesses, which included symptoms which overlapped with some of the symptoms of PTSD. However, defendants have presented no evidence that the treatment plaintiff received for his other mental illnesses adequately treated his PTSD. In other words, plaintiff may have suffered from other symptoms of PTSD, not covered by his other mental illnesses, which required additional treatment. Without knowing how PTSD is treated and the extent of plaintiff's symptoms, the court cannot find that defendants did not act with deliberate indifference. Accordingly, defendants should not be granted summary judgment as to this claim.

Plaintiff also claims that defendants Johnson and Shoemaker refused to recommend to custodial staff that plaintiff be temporarily single celled. Plaintiff is apparently claiming that his mental health problems required that he be single celled. As will be discussed below, plaintiff's claim against defendants concerns the time period of March 23, 2001, to April 11, 2001, when he was not single celled.

It is undisputed that plaintiff was the sole occupant of his cell from March 13, 2001, to March 23, 2001. Defendants' Exhibit C, pp. 118, 120, 124; Exhibit B, pp. 65-66. On March 20, 2001, the Unit Classification Committee denied plaintiff's request to continue his single cell status. Martel decl., ¶ 9-12. From approximately April 11, 2001 to July 11, 2001, plaintiff was again single celled. Plaintiff's declaration filed June 9, 2006, ¶ 45.

Defendants argue that they are entitled to summary judgment because plaintiff suffered no injury as a result of not being single celled from March 23, 2001, to April 11, 2001. Defendants argue that at best, plaintiff has alleged a mere difference of opinion with defendants as to appropriate medical care.

1    Because plaintiff is, in essence, alleging a delay in the receipt of adequate medical

2    care based on his failure to be continuously single celled, he must demonstrate that he suffered an

3    injury as a result of not being single celled from March 23, 2001, to April 11, 2001.  Shapley v.

4    Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985).  Plaintiff has not done so.

5    Accordingly, the court recommends that defendants be granted summary judgment as to this

6    claim.

7              F.  Defendants Baughman, Holmes and Martel: 39-41

8    Plaintiff alleges that on March 23, 2001, defendants Baughman, Holmes and

9    Martel conspired to have plaintiff placed in ad seg in retaliation for the February 1, 2001,

10   incident at the Sacramento County Jail.  In particular, plaintiff alleges that defendants had him

11   placed in ad seg based on unreliable confidential information.  The court construes plaintiff's

12   allegations to be raising due process and retaliation claims.

13   It is undisputed that on March 23, 2001, plaintiff was placed in ad seg after C-

14   Facility staff received confidential information that plaintiff was "fomenting violence."

15   Defendants' Exhibit A, p. 7.  At that time, plaintiff was not charged with any rules violations.

16   Accordingly, the court finds that plaintiff was placed in ad seg for administrative rather than

17   disciplinary reasons.

18   The Ninth Circuit has addressed the use of confidential information in the context

19   of disciplinary proceedings in which a liberty interest and due process rights exist.  In Zimmerlee

20   v. Keeney, 831 F.2d 183 (9th Cir. 1987), the Ninth Circuit clarified the circumstances under

21   which a prison disciplinary committee may rely on the statement of a confidential informant:

22          We hold that a prison disciplinary committee's determination derived from a
            statement of an unidentified inmate informant satisfies due process when 1) the
23          record contains some factual information from which the committee can
            reasonably conclude that the information was reliable, and 2) the record contains a
24          prison official's affirmative statement that safety considerations prevent the
            disclosure of the informant's name.

25

26   Zimmerlee, 831 F.2d at 186.

1    The Ninth Circuit further explained:

2        Reliability may be established by: 1) the oath of the investigating officer
         appearing before the committee as to the truth of his report that contains
3        confidential information, 2) corroborating testimony, 3) a statement on the record
         by the chairman of the committee that he had firsthand knowledge of sources of
4        information and considered them reliable based on the informant's past record, or
         4) an in camera review of the documentation from which credibility was assessed.
5        Proof that an informant previously supplied reliable information is sufficient.

6    Zimmerlee, 831 F.2d at 186-87.

7            On September 12, 2005, defendants filed under seal the documents on which they

8    relied to place plaintiff in ad seg on March 23, 2001. See September 12, 2005, sealed

9    documents, pp. 47-49. After conducting an in camera review of these documents, the court finds

10   that the decision to place plaintiff in ad seg based on administrative reasons satisfied the

11   standards for placement of inmates in ad seg for disciplinary reasons. The information provided

12   was independently verified and self-incriminating. See Cal. Code Regs. tit. 15, § 3321(c)(3) (a

13   confidential source's reliability may be established if the information provided is self-

14   incriminating). Accordingly, the court finds that defendants did not violate plaintiff's right to

15   due process when they placed him in ad seg on March 23, 2001, based on confidential

16   information.

17           Although defendants have not moved for summary judgment as to the related

18   retaliation claim, the court will sua sponte recommend that summary judgment be entered as to

19   the retaliation claim because plaintiff has had a "full and fair opportunity to ventilate the issues

20   involved in the matter." Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982). Plaintiff

21   argues that in placing him in ad seg, defendants were motivated to retaliate against him based on

22   the February 1, 2001, incident at the Sacramento County Jail. The documents provided by

23   defendants for in camera review indicate that the placement of plaintiff in ad seg on March 23,

24   2001, promoted the legitimate correctional goal of security. Rhodes v. Robinson, 408 F.3d at

25   567-568. For this reason, the court recommends that defendants be granted summary judgment

26   as to this claim.

G.  <u>Defendants Chastain, Martel, Mini and Shoemaker: ¶ 42-45</u>

Plaintiff alleges that defendants Chastain, Martel, Mini and Shoemaker were members of the March 29, 2001, Institutional Classification Committee (ICC) who decided to retain plaintiff in ad seg.  Plaintiff appears to allege that defendants' decision to retain him in ad seg violated his right to due process, was based on a retaliatory motive and disregarded his mental health needs in violation of the Eighth Amendment.

Plaintiff alleges that defendants violated his right to due process by deciding to retain him in ad seg based on unreliable confidential information.  This argument is a restatement of the argument made against the defendants who initially placed plaintiff in ad seg on March 23, 2001.  As discussed above, the court conducted an in camera review of the information from the confidential informant relied upon to place plaintiff in ad seg and determined that it was independently verified and self-incriminating.  For these reasons, plaintiff's claim that the March 29, 2001, decision to retain him in ad seg violated his right to due process because it was based on unreliable confidential information is without merit.

Although defendants have not moved for summary judgment as to plaintiff's related retaliation claim, the court will sua sponte recommend that summary judgment be entered as to the retaliation claim because plaintiff has had a "full and fair opportunity to ventilate the issues involved in the matter."  <u>Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 312 (9th Cir. 1982).  Plaintiff argues that in deciding to retain him in ad seg, defendants were acting to retaliate against him based on the February 1, 2001, incident at the Sacramento County Jail.  The documents provided by defendants for in camera review indicate that the retention of plaintiff in ad seg on March 29, 2001, promoted the legitimate correctional goal of security. <u>Rhodes v. Robinson</u>, 408 F.3d at 567-568.  For this reason, the court recommends that defendants be granted summary judgment as to this claim.

Defendants have not moved for summary judgment as to plaintiff's claim that on March 29, 2001, they failed to take into account his mental health problems when they decided to

1   retain him in ad seg.  Because it is not clear whether defendants are entitled to summary

2   judgment as to this claim, the court will not address it sua sponte.

3              H.   Defendant Lynch: ¶ 46-47

4              Plaintiff alleges that on April 2, 2001, defendant Lynch violated plaintiff's right to

5   due process and acted with a retaliatory motive when he confiscated plaintiff's cd/cassette player

6   because he believed it did not belong to plaintiff.  Plaintiff alleges that when he requested that the

7   cd/cassette player be disposed of pursuant to CDCR regulations, i.e. sent home or donated to

8   charity, defendant told him that it now belonged to the institution.  Plaintiff further alleges that

9   defendant Lynch said to him, "next time you ought to think about who it is you choose to piss

10   off."

11              Defendants have moved for summary judgment only as to plaintiff's due process

12   claim.  The United States Supreme Court has held that "an unauthorized intentional deprivation

13   of property by a state employee does not constitute a violation of the procedural requirements of

14   the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy

15   for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984).

16   Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional

17   deprivations constitute actionable violations of the Due Process Clause.  An authorized

18   deprivation is one carried out pursuant to established state procedures, regulations, or statutes.

19   Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of

20   Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

21              In the instant case, plaintiff is complaining not so much about the confiscation of

22   his property but as to its disposal.  Plaintiff is alleging that defendant Lynch failed to follow

23   CDCR regulations in disposing of his cd/cassette player.  As such, plaintiff is alleging that the

24   deprivation of his property was not authorized.  The California Legislature has provided a

25   remedy for tort claims against public officials in the California Government Code, §§ 900, et seq.

26   Since plaintiff has not attempted to seek redress in the state system, he cannot sue in federal court

1  on the claim that the state deprived him of property without due process of the law.  Accordingly,

2  defendant Lynch should be granted summary judgment as to this claim.

3  Because it is not clear that defendant Lynch is entitled to summary judgment as to

4  plaintiff's retaliation claim, the court will not sua sponte address this claim.

5  I.  <u>Defendants Chastain, Martel: ¶ 48-51</u>

6  Plaintiff alleges that defendants Chastain and Martel retaliated against him and

7  violated his right to due process.

8  In particular, plaintiff alleges that on April 26, 2001, he appeared before the ICC

9  of which defendant Chastain was a member.  The purpose of the hearing was to evaluate

10  plaintiff's retention in ad seg.  Plaintiff alleges that prior to the hearing, defendant Holmes had

11  told him that the allegation of his "fomenting violence," for which he had initially been placed in

12  ad seg, could not be substantiated.  Plaintiff alleges that at the April 26, 2001, hearing, defendant

13  Chastain told him that he was now under investigation for prison gang membership and would

14  not be released.  Plaintiff alleges that these new allegations were based on confidential

15  information received by defendant Martel.  Defendant Chastain told him that if he were validated

16  as a gang member he would be sent to Pelican Bay Prison.  Defendant Chastain further stated, "I

17  don't think you'll be assaulting any of those cops up there, believe you me."

18  Plaintiff alleges that defendant Chastain violated his right to due process by not

19  following CDCR procedures at the April 26, 2001, hearing.  Plaintiff also believes that defendant

20  Martel reinitiated an investigation of plaintiff's gang membership, not based on new information,

21  but because the allegations of fomenting violence could not be substantiated.

22  After reviewing the record, the court finds that plaintiff's explanation for

23  defendants' decision to retain him in ad seg on April 26, 2001, is inaccurate.  The record

24  indicates that defendants chose to retain him in ad seg pending completion of the "fomenting

25  violence" allegations.  Plaintiff's Original Complaint, Exhibit O.  At the April 26, 2001, hearing

26  defendants also referred plaintiff's case for possible gang validation.  <u>Id.</u>  In other words, at the

1  April 26, 2001, hearing defendants' reasons for retaining him in ad seg were the same as those on

2  which his initial placement was based as well as the March 29, 2001, decision to retain him.

3         For the reasons discussed above, the court finds that the confidential information

4  on which defendants relied upon on April 26, 2001, to retain plaintiff in ad seg was sufficiently

5  reliable.  Accordingly, defendants should be granted summary judgment as to this claim.

6         Although defendants have not moved for summary judgment as to plaintiff's

7  related retaliation claim, the court will sua sponte recommend that summary judgment be entered

8  as to this claim because plaintiff has had a "full and fair opportunity to ventilate the issues

9  involved in the matter."  Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982).  Plaintiff

10  argues that in deciding to retain him in ad seg, defendants were acting to retaliate against him

11  based on the February 1, 2001, incident at the Sacramento County Jail.  The documents provided

12  by defendants for in camera review indicate that the retention of plaintiff in ad seg on April 26,

13  2001, promoted the legitimate correctional goal of security.  Rhodes v. Robinson, 408 F.3d at

14  567-568.  For this reason, the court recommends that defendants be granted summary judgment

15  as to this claim.

16         J.  Defendant Scarcella: ¶ 52-56

17         Plaintiff alleges that defendant Scarcella prepared a report falsely stating that on

18  May 18, 2001, defendants began holding plaintiff in ad seg pending an investigation of his gang

19  membership.  Plaintiff argues that defendants began holding him in ad seg based on his gang

20  membership on April 26, 2001.  Plaintiff argues that had the report truthfully stated that he was

21  retained in ad seg as of April 26, 2001, based on his gang membership, then defendants would

22  have been required to grant him a hearing on these new grounds within ten days of that date as

23  required by Cal. Code Regs. tit. 15, § 3335(c).  Instead, defendants did not hold a hearing on

24  these new grounds until May 24, 2001.

25         Due process requires that prison officials hold an informal, nonadversary hearing

26  within a reasonable time after a prisoner is placed in administrative segregation.  Toussaint v.

1    McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1987).  The prisoner must be informed of the charges

2    against him and prison officials must allow the prisoner to present his views.  Id.  Retention in

3    administrative segregation must be reviewed periodically.  Id., citing Hewitt v. Helms, 459 U.S.

4    460, 103 S.Ct. 864 (1983)

5              For purposes of these findings and recommendations, the court will assume that

6    plaintiff was entitled to a hearing within a reasonable time of April 26, 2001, i.e. the date

7    plaintiff claims defendants first decided to retain him in ad seg based on possible gang

8    membership.  According to plaintiff, he had his first hearing on these new grounds on May 24,

9    2001.  This hearing was within a reasonable time after his "placement" in ad seg of these new

10   charges.

11             In Myron v. Landsberger, No. 04-15770 (9th Cir. Aug. 7, 2006), the Ninth Circuit

12   found that a liberty interest could arise from state law as well as the Due Process Clause.

13   Assuming California regulations created a liberty interest in a hearing following defendants'

14   decision to hold plaintiff in ad seg based on new grounds, the process due was a hearing within a

15   reasonable amount of time.  Defendants' failure to hold the hearing within the ten days allegedly

16   required by the regulations did not violate plaintiff's right to due process.

17             Although defendants have not moved for summary judgment as to plaintiff's

18   related retaliation claim, the court will sua sponte recommend that summary judgment be entered

19   as to the retaliation claim because plaintiff has had a "full and fair opportunity to ventilate the

20   issues involved in the matter."  Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982).

21   Plaintiff alleges that defendant Scarcella was motivated to retaliate against plaintiff based on the

22   February 1, 2001, incident at the Sacramento County Jail when he filed the report falsely stating

23   the date on which plaintiff was retained in ad seg based on the new grounds.  Other than his

24   conclusory assertion of retaliation, plaintiff has supported no evidence to support this claim.

25   Moreover, plaintiff has alleged no injury as a result of this alleged retaliation.  Accordingly, the

26   court recommends that defendants be granted summary judgment as to this claim.

1          K.   Defendant Holmes:  ¶ 57-59

2          Plaintiff alleges that on May 29, 2001, defendant Holmes filed false disciplinary

3    charges against him in violation of his right to due process.

4          It is undisputed that on May 29, 2001, defendant Holmes filed a rules violation

5    report charging plaintiff with actions that could lead to violence.  Holmes Declaration, ¶ 7.

6    Defendant Martel voided the rules violation report and changed it to a 128B informational

7    chrono.  Id.  While this chrono is in plaintiff's central file, the rules violation report is not.  Id.

8          Because the rules violation report was voided, no due process violation occurred.

9    Cf. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (allegation that filing a false

10   disciplinary charge against an inmate is not actionable under § 1983 where procedural due

11   process protections are provided).

12          Plaintiff also claims that when defendant Holmes filed the allegedly false

13   disciplinary report, he was motivated to retaliate against plaintiff based on the February 1, 2001,

14   incident at the Sacramento County Jail.  Although defendants have not moved for summary

15   judgment as to plaintiff's related retaliation claim, the court will sua sponte recommend that

16   summary judgment be entered as to the retaliation claim because plaintiff has had a "full and fair

17   opportunity to ventilate the issues involved in the matter."  Cool Fuel, Inc. v. Connett, 685 F.2d

18   309, 312 (9th Cir. 1982).

19          Plaintiff does not allege that he suffered a "chilling effect" as a result of the filing

20   of the allegedly false disciplinary charges.  Rhodes v. Robinson, 408 F.3d at 568, n. 11.

21   Therefore, to succeed on this claim plaintiff must allege that he suffered more than minimal

22   harm.  Id.  The filing of an informational chrono in plaintiff's central file does not constitute

23   sufficient harm on which to base a retaliation claim.  Accordingly, because plaintiff has not

24   demonstrated sufficient harm, his retaliation claim must fail.  Accordingly, defendants should be

25   granted summary judgment as to this claim.

26   /////

1          L.   Defendant Martel and Chastain: ¶ 60-62

2          Plaintiff alleges that on May 31, 2001, he appeared before an ICC of which

3   defendants Martel and Chastain were members.  The ICC told plaintiff that although there was

4   insufficient evidence to validate plaintiff as a gang member, he would be retained in ad seg based

5   on the charges filed against him by defendant Holmes on May 29, 2001.  The ICC, including

6   defendant Martel, told plaintiff that due to the serious nature of those charges and because

7   plaintiff had an enemy on B Facility, plaintiff would be retained in ad seg and transferred to

8   another prison.

9          Plaintiff alleges that the decision to retain him in ad seg and transfer him to a

10  different prison violated his right to due process and was based on a retaliatory motive.

11         The evidence indicates that plaintiff's ICC hearing was held June 1, 2001, rather

12  than May 31, 2001.  Defendants' Exhibit A, p. 5.  The notice prepared following the hearing

13  states in relevant part:

14              You were placed into Administrative Segregation (Ad-Seg) on 3/23/01, for
                investigation into fomenting violence between Staff and inmates within C-
15              Facility.  This investigation resulted in disciplinary documentation. On 5/19/01,
                you were retained in Ad-Seg pending investigation by I.G.I., for possible gang
16              validation.  I.G.I. completed their investigation noting insufficient evidence for
                validation at this time. On 06/1/01 you are being retained in Ad-Seg pending
17              transfer to another Level IV prison.  This transfer is necessary due to you having
                documented enemies on B-Facility and not meeting the housing criteria for A-
18              Facility.  You are not eligible for C-Facility due to enough documented evidence
                to establish your active role as a disruptive influence to the operations of the
19              Facility.

20  Defendants' Exhibit A, p. 5.

21         As discussed above, due process requires that there be an evidentiary basis for the

22  prison officials' decision to place an inmate in segregation for administrative reasons.  Toussaint,

23  801 F.2d at 1104-05.  This standard is met if there is "some evidence" from which the conclusion

24  of the administrative tribunal could be deduced.  Id. at 1105.  The court will apply these

25  standards to the June 1, 2001, decision to retain plaintiff in ad seg pending his transfer to another

26  prison.

1        Plaintiff does not dispute that he could not be released to B Facility because he

2   had documented enemies.  Plaintiff also apparently does not dispute that he could not be released

3   to A Facility because he did not meet the housing criteria.  Plaintiff is apparently disputing the

4   reasons he could not be released to C Facility.  While plaintiff claims that he was retained in ad

5   seg based on the false charges made against him by defendant Holmes, the notice prepared

6   following the June 1, 2001, hearing states that plaintiff could not be released to C Facility

7   because of his active role as a disruptive influence.

8        If plaintiff's involvement as a gang member could not be verified and if

9   defendants chose not to pursue disciplinary charges against plaintiff for actions that could lead to

10  violence, the grounds on which defendants determined plaintiff was a disruptive influence are not

11  clear.  Because defendants have not adequately demonstrated why plaintiff could not be released

12  to C Facility, defendants should not be granted summary judgment as to this due process claim.

13       Defendants have not moved for summary judgment as to plaintiff's related claims

14  that they retaliated against him for the February 1, 2001, incident at the Sacramento County Jail

15  by deciding to retain him in ad seg after June 1, 2001, and by recommending his transfer.  The

16  court will not address these claims sua sponte because it is not clear that defendants are entitled

17  to summary judgment as to these claims.

18                      M.  Defendants Dunlap, Kimbrell and Rosario: ¶ 63-64

19       Plaintiff alleges that defendants Dunlap, Kimbrell and Rosario violated his right

20  to due process by not properly processing his administrative appeals.  Plaintiff also alleges that

21  defendants' actions were based on a retaliatory motive.

22       Plaintiff has no right to an administrative grievance procedure.  Ramirez v.

23  Galaza, 334 F.3d 850, 860 (2003) (inmates lack a separate constitutional entitlement to a specific

24  prison grievance procedure) (citing Mann v. Adams, 855 F.2d 939, 640 (9th Cir. 1988)).

25  Accordingly, defendants should be granted summary judgment as to plaintiff's due process

26  claim.

Although defendants have not moved for summary judgment as to the related retaliation claim, the court will sua sponte recommend that summary judgment be entered as to the retaliation claim because plaintiff has had a "full and fair opportunity to ventilate the issues involved in the matter." Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir. 1982).

Plaintiff is apparently claiming that defendants did not properly process his appeals in retaliation for the incident at the Sacramento County Jail. Other than this conclusory assertion, plaintiff has provided no evidence to support this claim. Because this claim is vague, conclusory and unsupported, the court recommends that defendants be granted summary judgment.

### N.  Defendant Hoffman: ¶ 65-69

Plaintiff alleges that defendant Hoffman violated his right to access the courts when he failed to make photocopies of plaintiff's civil rights complaint on June 19, 2001. Plaintiff contends that when he asked defendant Hoffman to approve his complaint for copying, defendant Hoffman read the complaint, studied the exhibits then told plaintiff that it was not properly prepared. Plaintiff alleges that he was left with no choice but to send the complaint to the court without sufficient copies.

In order to demonstrate a violation of the right to access the courts, plaintiff must demonstrate that he suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 348, 116 S.Ct. 2174 (1996). Plaintiff does not claim that he was unable to file this or any other action with the court because of defendant Hoffman's alleged refusal to make copies. Because plaintiff has not demonstrated that he suffered an actual injury, defendant Hoffman should be granted summary judgment as to this claim.

### O.  Defendants Jaffee and Kelly: ¶ 70-72

Plaintiff alleges that defendants Jaffee and Kelly promulgated policies that resulted in plaintiff receiving inadequate care for his mental health problems while housed in ad seg. In particular, plaintiff alleges that defendant Kelly told him that no specialized treatment

1  was available for prisoners at the Clinical Care Case Management (CCMS) level of care while

2  they were housed in ad seg.  Plaintiff claims that while he was allowed a little more time with his

3  case manager while housed in ad seg, he did not receive adequate treatment for PTSD or for his

4  pre-existing mental conditions.  Plaintiff claims that his mental health deteriorated while he was

5  housed in ad seg.

6          For the same reasons the court above recommended that defendants Johnson,

7  Jaffee and Shoemaker be denied summary judgment as to plaintiff's claim that he was not treated

8  for PTSD while in ad seg, the court recommends that defendants Jaffee and Kelly be denied

9  summary judgment as to this claim.  Defendants have not adequately demonstrated that the

10  failure to treat plaintiff for his PTSD did not constitute deliberate indifference.

11          Defendants have not moved for summary judgment as to plaintiff's claim that he

12  was denied adequate mental health treatment for his other mental conditions while housed in ad

13  seg.  The court will not sua sponte address this claim because it is not clear that defendants Jaffee

14  and Kelly are entitled to summary judgment as to this claim.

15                  P.  Defendants Jaffee, Terhune, Pliler and Rosario: ¶ 74-76

16          Plaintiff alleges that defendants Jaffee, Terhune, Pliler and Rosario applied the

17  "heat risk plan" in a discriminatory manner.  Plaintiff alleges that inmates in the Enhanced Out-

18  Patient mental health program are treated differently than inmates, like plaintiff, who are in the

19  CCMS mental health treatment program.

20          In particular, plaintiff alleges that when temperatures reach 90 degrees, inmates in

21  ad seg who are part of the CCCMS treatment program must stay inside.  In contrast, inmates in

22  ad seg who are part of the EOP program are allowed to stay on the exercise yard because that

23  yard contains a sprinkler system which sprays a continuous mist of water.

24          Defendants argue that they are entitled to summary judgment as to this claim

25  because all inmates who are taking psychotropic drugs, regardless of whether they are in the EOP

26  or CCCMS programs, are required to go inside when the temperature reaches 90 degrees.

1   Defendants' Exhibit E, p. 3; Moazam declaration, ¶ 17.

2          In his declaration filed June 9, 2006, in support of his opposition, plaintiff states

3   that he was part of the CCCMS treatment program until July 5, 2001.  Plaintiff's declaration, ¶

4   34.  Plaintiff again states that while housed in ad seg in the CCCMS program, he was not allowed

5   outside when the temperature reached 90 degrees.  Id., ¶ 35.  Plaintiff alleges that while housed

6   in the ad seg EOP unit, he was permitted outside exercise when the temperature reached 90

7   degrees because the exercise yard contained misters.  Id., ¶ 36.

8          Assuming plaintiff's version of events, to succeed on this claim he must

9   demonstrate that inmates in the CCCMS program and inmates in the EOP program are similarly

10  situated.  Mayner v. Callahan, 873 F.2d 1300, 1301 (9th Cir. 1989) ("The equal protection clause

11  directs that 'all persons similarly circumstanced shall be treated alike.'") This he has not done.

12  The evidence indicates that inmates in these programs have different mental health needs,

13  suggesting that they are not similarly situated:

14          Designation for CCCMS is based on an inmate's global assessment functioning
            ("GAF") score.  For mental health services from CCCMS, the GAF score must be
15          50 or higher.  On the other hand, for mental health services through the Enhanced
            Outpatient Program ("EOP"), an inmate must have a GAF of 30 or higher.  The
16          GAF is an assessment of how well an individual functions in his environment.

17  Moazam declaration, ¶ 5.

18          Because plaintiff has not demonstrated that inmates in the CCCMS and EOP

19  programs are similarly situated, defendants should be granted summary judgment as to this

20  claim.

21          Q.  Defendants Terhune, Plilier, Rosario, Jaffee, Johnson, Kelly, Clareve and

22          Shoemaker: ¶ 77-80

23          Plaintiff alleges that on July 1, 2001, he attempted suicide as a result of

24  defendants failure to treat his PTSD.  Plaintiff also suggests that at the time of the suicide

25  attempt, he had stopped taking his medication so that he could have access to the exercise yard

26  during the hot weather.

1    As discussed above, whether defendants' failure to treat plaintiff's PTSD

2    constituted deliberate indifference is a materially disputed fact.  Based on this finding, the court

3    finds that whether defendants' failure to treat plaintiff's PTSD caused plaintiff's suicide attempt

4    is also materially disputed.  Plaintiff's failure to take his medication is a factor for the fact finder

5    to consider when determining the issue of deliberate indifference, including whether prison

6    officials "rewarded" inmates who stopped taking their heat-risk medication with access to the

7    yard.  For these reasons, defendants should not be granted summary judgment as to this claim.

8    R.  Defendants Stiles, Massey and Clavere: ¶ 81-84

9    Plaintiff alleges that on July 11, 2001, defendants Stiles and Clavere assigned

10   plaintiff to a double cell and a "walk alone" yard knowing that these conditions would exacerbate

11   plaintiff's mental health problems.  In the summary judgment motion, defendants construed these

12   allegations to state a due process claim.  However, plaintiff's second amended complaint alleges

13   that defendants were motivated by retaliation.  Plaintiff's allegations also suggest an Eighth

14   Amendment claim.

15   Because defendants did not move for summary judgment as to the retaliation and

16   Eighth Amendment claims regarding plaintiff's placement on the walk-alone yard, and it is not

17   clear that defendants are entitled to summary judgment as to these claims, the court will not

18   address these claims sua sponte.[1]

19

20   [1]In his declaration filed in support of his opposition, plaintiff states that defendants placed
     him on walk alone yard and single cell status in retaliation for an administrative appeal plaintiff
21   filed against Officer Gehlen the day before the July 11, 2001, hearing.  Plaintiff's declaration, ¶
     41-42.  Plaintiff also states that defendants were retaliating against him based on the incident at
22   the Sacramento County Jail.  Id., ¶ 43.  Plaintiff alleges that at the July 11, 2001, hearing
     defendants Stiles told him that Officer Gehlen told her that plaintiff had been abusive towards
23   and, therefore, plaintiff would be placed on walk alone yard to teach him a lesson because
     plaintiff had "obviously not learned to respect authority."  Id.
24              Plaintiff's declaration suggests that defendants were motivated to retaliate against
     him based on the Sacramento County Jail incident.  Although plaintiff does not directly allege
25   that defendants were aware of the administrative appeal he had filed against defendant Gehlen,
     plaintiff has presented sufficient evidence in support of this claim to withstand "sua sponte"
26   summary judgment.

32

1      Defendants are entitled to summary judgment in part as to plaintiff's Eighth

2  Amendment claim concerning his placement in the double cell on July 11, 2001.  Accordingly,

3  the court will address this claim sua sponte.

4      Plaintiff alleges that defendants ordered him double-celled, they housed him with

5  a prisoner with no mental health problems.  Plaintiff and this prisoner later had an altercation as a

6  result of which plaintiff suffered minor scrapes.

7      Defendants argue that plaintiff did not meet the criteria for single cell status.  Cal.

8  Code Regs. tit. 15 § 3377.1(c) provides that a classification committee may order that a prisoner

9  be single celled based on documented evidence that the inmate cannot safely be double celled

10 based on a recommendation by custody staff or a health care clinician.  Defendant Stiles is an

11 Associate Warden.  Second Amended Complaint, p. 8.  Defendant Massey is a Correctional

12 Lieutenant.  Second Amended Complaint, p. 9.  Accordingly, these defendants had no authority

13 to recommend that plaintiff be single celled for mental health reasons.  For this reason, the court

14 recommends that these defendants be granted summary judgment sua sponte as to this claim.

15     Defendant Clavere, a clinical psychologist, had the authority to recommend that

16 plaintiff be single celled.  While defendants argue that plaintiff did not meet the criteria for single

17 cell placement, the court observes that plaintiff had been on single cell status for ninety days

18 while housed in ad seg until July 11, 2001.  Without knowing what circumstances had changed in

19 plaintiff's mental health between July 11, 2001, and August 11, 2001, to warrant plaintiff's

20 placement in a double cell, the cannot find that defendant Clavere is entitled to sua sponte

21 summary judgment as to this claim.

22     Plaintiff also alleges that defendants were motivated by retaliation when they

23 ordered him double celled.  Because defendants Stiles and Massey did not have the authority, as

24 correctional staff, to recommend that plaintiff be single celled based on his mental health

25 problems, plaintiff's retaliation claim against these defendants fails.  Accordingly, the court

26 recommends that these defendants be granted summary judgment sua sponte as to this claim.

Because it is not clear whether defendant Clavere is entitled to summary judgment as to

plaintiff's retaliation claim, the court will not sua sponte address this claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' September 8, 2005, summary judgment motion be denied as to the

following claims: 1) defendant Andrade delayed plaintiff's access to medical care following his

return to the jail and failed to ensure that plaintiff be woken up every two hours as ordered by the

doctor in violation of the Eighth Amendment and with a retaliatory motive; 2) defendant

Advincula took plaintiff's cane in violation of the Eighth Amendment and with a retaliatory

motive; 3) defendant Holmes violated the Eighth Amendment when he assigned plaintiff to an

upper tier; 4) defendants Johnson, Shoemaker and Jaffee violated the Eighth Amendment when

they failed to treat plaintiff for PTSD; 5) defendants Chastain, Martel, Mini and Shoemaker

violated the Eighth Amendment when they decided to retain plaintiff in ad seg on March 29,

2001, in disregard of plaintiff's mental health needs; 6) defendant Lynch acted with a retaliatory

motive when he confiscated plaintiff's cd/cassette player; 7) defendants Martels and Chastain

violated plaintiff's right to due process and acted with a retaliatory motive on May 31, 2001,

when they ordered plaintiff retained in ad seg and transferred to a different prison; 8) defendants

Jaffee and Kelly violated the Eighth Amendment by not providing plaintiff with adequate mental

health care while he was housed in ad seg; 9) defendants Terhune, Pliler, Rosario, Jaffee,

Johnson, Kelly Clavere and Shoemaker provided inadequate mental health care that resulted in

plaintiff attempting suicide; 10) defendants Stiles and Clavere violated the Eighth Amendment

and acted with a retaliatory motive when they assigned plaintiff to the "walk alone" yard; 11)

defendant Clavere violated the Eighth Amendment and acted with a retaliatory motive when he

ordered plaintiff double celled.

2. Defendants' September 8, 2005, summary judgment motion should be granted

in all other respects.

/////

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within ten days after service of the objections.  The parties are advised

7  that failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:   8/16/06

                                              /s/ Gregory G. Hollows
10
                                              _____
11                                            GREGORY G. HOLLOWS
                                              UNITED STATES MAGISTRATE JUDGE

12

13

14
   ggh:kj
15 mc1218.sj

16

17

18

19

20

21

22

23

24

25

26