1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EVERETT McCOY,

11            Plaintiff,                    No. CIV S-01-1218 RRB GGH P

12       vs.

13   CAL TERHUNE, et al.,

14            Defendants.             FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This action is proceeding on the second amended complaint filed February 5,

18   2003.  Pending before the court is defendants' motion for partial summary judgment filed May

19   16, 2007.  For the following reasons, the court recommends that defendants' motion be granted.

20   SUMMARY JUDGMENT STANDARDS UNDER RULE 56

21            Summary judgment is appropriate when it is demonstrated that there exists "no

22   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

23   matter of law."  Fed. R. Civ. P. 56(c).

24            Under summary judgment practice, the moving party

25            always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
26            pleadings, depositions, answers to interrogatories, and admissions

1

1    on file, together with the affidavits, if any," which it believes
     demonstrate the absence of a genuine issue of material fact.
2

3    Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

4    P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

5    issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

6    depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

7    should be entered, after adequate time for discovery and upon motion, against a party who fails to

8    make a showing sufficient to establish the existence of an element essential to that party's case,

9    and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

10   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

11   necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

12   should be granted, "so long as whatever is before the district court demonstrates that the standard

13   for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

14   2553.

15         If the moving party meets its initial responsibility, the burden then shifts to the

16   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

17   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

18   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

19   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

20   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

21   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

22   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

23   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

24   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

25   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

26   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

1  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

2       In the endeavor to establish the existence of a factual dispute, the opposing party

3  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

4  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

5  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

6  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

7  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

8  56(e) advisory committee's note on 1963 amendments).

9       In resolving the summary judgment motion, the court examines the pleadings,

10  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

12  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

13  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

14  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

15  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

16  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

17  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

18  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

19  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

20  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

21       On October 23, 2003, the court advised plaintiff of the requirements for opposing

22  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

23  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

24  1988).

25  /////

26  /////

3

DISCUSSION

On September 7, 2005, defendants filed a summary judgment motion which failed to address plaintiff's retaliation claims.  On August 16, 2006, this court recommended that defendants' motion be granted in part and denied in part.  The court recommended, in part, that defendants be granted summary judgment sua sponte as to several of plaintiff's retaliation claims. The court also declined to address the following retaliation claims: 1) defendant Andrade denied plaintiff access to medical care; 2) defendant Massey placed plaintiff in administrative segregation (ad seg); 3) defendant Advincula denied plaintiff access to medical care; 4) defendant Holmes denied plaintiff adequate medical care; 5) defendants Chastain, Martel, Mini and Shoemaker retained plaintiff in ad seg; 6) defendant Lynch confiscated plaintiff's personal property; 7) defendants Martel and Chastain retained plaintiff in ad seg after June 1, 2001; 8) defendants Stiles, Massey and Clavere placed plaintiff on the walk-alone yard.

On March 30, 2007, the district court adopted the findings and recommendations in part.  Judge Levi denied defendants' summary judgment motion as to the following claims: 1) plaintiff's Eighth Amendment claim against defendant Andrade concerning plaintiff's access to medical care following his return to the jail and the doctor's order that plaintiff be woken every two hours; 2) plaintiff's Eighth Amendment claim against defendant Advincula concerning the denial of plaintiff's cane and plaintiff's pushing of the cart; 3) plaintiff's Eighth Amendment claim against defendant Holmes concerning assignment to the upper tier; 4) plaintiff's Eighth Amendment claim against defendants Chastain, Martel, Mini, and Shoemaker concerning their consideration of plaintiff's mental health problems when they retained him in administrative segregation; 5) plaintiff's Eighth Amendment claims against defendants Stiles and Clavere concerning their assignment of plaintiff to the "walk alone" yard; and 6) plaintiff's Eighth Amendment claim against defendant Clavere concerning the order that plaintiff be double celled.

In the March 30, 2007, order, Judge Levi also ordered that defendants could file a second summary judgment motion addressing the retaliation claims unaddressed by the prior

4

1  motion and still outstanding.[1]  Judge Levi granted defendants' summary judgment motion in all

2  other respects.

3          On May 16, 2007, defendants filed the pending summary judgment motion.  This

4  motion addresses the remaining retaliation claims but for the claims against defendants Massey,

5  Shoemaker and Mini.  However, the court finds that defendants are entitled to summary

6  judgment sua sponte as to these claims.  Cool Fuel, Inc. v. Connett, 685 F.2d 309, 312 (9th Cir.

7  1982) (court may sua sponte grant summary judgment if losing party has had a full and fair

8  opportunity to ventilate the issues involved in the matter).

9          "Within the prison context, a viable claim of First Amendment retaliation entails

10  five basic elements: (1) an assertion that a state actor took some adverse action against an inmate

11  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmates's

12  exercise of his First Amendment rights, [footnote 5], and (5) the action did not reasonably

13  advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-568 (9th Cir.

14  2005).

15          In Rhodes v. Robinson, the Ninth Circuit also indicated that an allegation of harm

16  could be sufficient if the inmate could not allege a chilling effect:

17          If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered
           harm would suffice, since harm that is more than minimal will almost always have
18          a chilling effect.  Alleging harm and alleging the chilling effect would seem under
           the circumstances to be no more than a nicety.  See e.g., Pratt, 65 F.3d at 807
19          (deciding that alleged harm was enough to ground a First Amendment retaliation
           claim without independently discussing whether the harm had a chilling effect);
20          Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)(same).

21  408 F.3d at 568 n. 11.

22          In the second amended complaint, plaintiff alleged that on February 1, 2001, he

23  was beaten by guards while housed at the Sacramento County Jail.  Later that day, he was

24  _____

25      [1]  In his opposition to the pending motion, plaintiff argues that Judge Levi did not adopt
    the portion of the findings and recommendations granting defendants summary judgment sua
    sponte to several of his retaliation claims.  Plaintiff's interpretation of Judge Levi's order is
26  incorrect.

5

1   transported back to California State Prison-Sacramento (CSP-Sac).  Plaintiff alleged that

2   following his return to CSP-Sac, defendants violated his constitutional rights in retaliation for the

3   incident at the jail.  Plaintiff claimed that the protected conduct he engaged in was self-defense

4   while he was allegedly being attacked by jail officials.  In essence, plaintiff claimed that

5   defendants were retaliating against him for fighting with jail officials.

6          Defendants first argue that they are entitled to summary judgment because self-

7   defense is not protected conduct.  In support of this claim, defendants cite Rowe v. Debruyn, 17

8   F.3d 1047, 1052-53 (7th Cir. 1994), which held that prisoners do not have a federal constitutional

9   right to self-defense.[2]

10          In his opposition filed June 20, 2007, plaintiff states that he is not arguing that

11  defendants retaliated against him for engaging in self-defense.  Opposition, p. 4.  Plaintiff argues

12  that the denial of medical care and other alleged violations of his constitutional rights was meant

13  to discourage him from filing grievances complaining about the beating at the jail. Id., p. 5.

14  Although this theory was not clearly presented in plaintiff's second amended complaint, the court

15  will address it in these findings and recommendations.

16          The right to file a prison grievance is a constitutionally protected First

17  Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997).  Conduct used to discourage

18  the exercise of First Amendment freedoms need not be particularly great in order to find that

19  rights have been violated.  Thomas v. Carpenter, 881 F.2d 828, 830 (9th Cir. 1989).  To succeed

20  on this claim, plaintiff must demonstrate that defendants were motivated to discourage him from

21  filing grievances regarding the incident at the jail when they engaged in the alleged misconduct.

22          The court has reviewed plaintiff's opposition and finds no evidence that

23  defendants Andrade, Advincula and Holmes were motivated to discourage plaintiff from

24

25          [2]  In Rowe, the plaintiff prisoner was engaged in self-defense when fighting with another
    prisoner as opposed to correctional staff.  The undersigned believes that the dissent has the better
26  argument.

6

1  complaining about the incident at the jail when they allegedly denied him adequate medical care.

2  While the court denied defendants' summary judgment motion as to plaintiff's Eighth

3  Amendment claims against these defendants for providing inadequate medical care, this does not

4  prove that defendants were motivated to prevent plaintiff from filing grievances when they

5  allegedly provided inadequate medical care.

6          The court also finds no evidence that defendants Massey, Chastain, Martel, Mini

7  and Shoemaker were motivated to discourage plaintiff from complaining about the incident at the

8  jail when they placed plaintiff in ad seg and retained him in ad seg.  Finally, the court finds no

9  evidence that defendant Lynch was motivated to discourage plaintiff from complaining about the

10  incident at the jail when he allegedly confiscated plaintiff's personal property.

11          In summary, plaintiff alleges without support that defendants Andrade, Advincula,

12  Holmes, Massey, Chastain, Martel, Mini and Shoemaker were motivated to discourage him from

13  filing complaints about the incident at the jail.  Plaintiff has failed to establish a link between the

14  defendants' alleged misconduct and the exercise of his First Amendment rights.  See Pratt v.

15  Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (holding that prisoner must establish link between

16  exercise of his constitutional rights and allegedly retaliatory action).

17          As for the claim that defendants Stiles, Massey and Clavere placed him on walk-

18  alone yard in an attempt to discourage him from complaining about the incident at the jail,

19  plaintiff relies on his declaration submitted in opposition to defendants' first summary judgment

20  motion.  In his declaration filed June 9, 2006, plaintiff stated that on July 10, 2001, Officer

21  Gehlen made inappropriate comments about plaintiff in front of other inmates.  Plaintiff's

22  declaration, ¶ 39.  Plaintiff claims that Officer Gehlen made these comments in response to

23  plaintiff confronting him about his refusal to double cuff him, as ordered by the doctor.  Id., ¶ 40.

24  Plaintiff filed a grievance against defendant Gehlen regarding the comments.  Id., ¶ 41.

25          In his declaration, plaintiff alleges that later that day, he appeared for a program

26  review before a committee of which defendants Stiles and Clavere were members.  Id., ¶ 43-44.

7

1  Defendant Stiles told plaintiff that Officer Gehlen had informed her that plaintiff had been

2  verbally abusive toward him.  Id., ¶ 43.  Defendant Stiles told plaintiff that he would be placed

3  on walk-alone yard to teach him a lesson because he "obviously still [had] not learned to respect

4  authority."  Id., ¶ 43.  Defendant Clavere agreed, stating that plaintiff would be placed on walk

5  alone yard because he was verbally abusive to staff.  Id., ¶ 44.  Plaintiff claims that defendant

6  Clavere had previously assured plaintiff that he would recommend group yard for him.  Id.

7        Plaintiff argues that the comment that he still had not learned to respect authority

8  was a reference to the incident at the jail.  However, the more reasonable inference is that this

9  comment referred to plaintiff's alleged verbal abuse of Officer Gehlen.  According to plaintiff,

10  defendant Clavere stated at the hearing that plaintiff was being placed on walk-alone yard based

11  on the incident involving Officer Gehlen.  Plaintiff has presented no evidence that defendants

12  intended to discourage him from filing grievances regarding the jail incident when they placed

13  him on walk alone yard.  For this reason, defendants should be granted summary judgment as to

14  this claim.

15        Defendants also argue that they are entitled to summary judgment because

16  plaintiff's First Amendment rights were not chilled.  Rhodes v. Robinson, 408 F.3d 559, 567-568

17  (9th Cir. 2005).  Defendants state that since 2001, plaintiff has filed 55 inmate appeals, covering

18  everything from staff misconduct to living conditions.  Defendants' Exhibit G.

19        In his opposition, plaintiff argues that Rhodes does not require that he

20  demonstrate a total chilling of his First Amendment rights.  In Rhodes, the Ninth Circuit stated

21  that speech can be chilled even when not completely silenced.  408 F.3d at 568.  "Because 'it

22  would be unjust to allow a defendant to escape liability for a First Amendment violation merely

23  because an unusually determined plaintiff persists in his protected activity,' Rhodes does not

24  have to demonstrate that his speech was 'actually inhibited or suppressed.'"  Id. at 569.  The

25  proper First Amendment inquiry asks "'whether an official's acts would chill or silence a person

26  of ordinary firmness from future First Amendment activities.'"  Id., at 568 (citation omitted).

1    The issue in this case is not so much whether defendants chilled plaintiff's ability

2    to file grievances at the prison regarding all matters, but whether defendants chilled plaintiff's

3    ability to file a grievance regarding the incident at the jail.  Presumably a grievance regarding an

4    incident at the jail would have to be filed with jail officials as opposed to prison officials.

5    Neither party addresses whether plaintiff filed a grievance with jail officials or if he was capable

6    of doing so following his return to the prison.  For this reason, the court will not address this

7    issue.

8    Defendants also argue that they are entitled to summary judgment because any

9    harm suffered by plaintiff as a result of defendants' conduct was minimal.  For example,

10   defendants argue that any injury suffered by plaintiff as a result of defendant Andrade's alleged

11   failure to provide adequate medical care was minimal.  Defendants also argue that they were

12   motivated by legitimate correctional goals.  The court need not reach these arguments because

13   plaintiff has failed to demonstrate that any defendants were motivated to discourage him from

14   filing a grievance regarding the incident at the jail.

15   Accordingly, for the reasons discussed above, the court recommends that

16   defendants be granted summary judgment as to plaintiff's remaining retaliation claims.

17   Accordingly, IT IS HEREBY RECOMMENDED that defendants' May 16, 2007,

18   summary judgment motion be granted.

19   These findings and recommendations are submitted to the United States District

20   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

21   days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served and filed within ten days after service of the objections.  The parties are advised

25   \\\\\

26   \\\\\

1   that failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:   11/9/07

4                                                          /s/ Gregory G. Hollows

                                                          _____
5                                                          UNITED STATES MAGISTRATE JUDGE

6   mccoy.sj(2)

10